SOUTH MEADOWS REALTY CORPORATION *v.* STATE OF CONNECTICUT

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

290

Argued January 2—decided March 5, 1957

*William J. Galvin, Jr.,* with whom were *Francis P. Pallotti* and *George A. Silvester,* for the appellant (plaintiff).

*Jack Rubin,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (defendant).

DALY, J. In this action against the state, the plaintiff sought a declaratory judgment determining whether it has a right of access directly from its land to the abutting portion of the Hartford by-pass. This highway is stipulated to be a part of the Wilbur Cross Parkway. Permission to bring the action was granted by the General Assembly. 27 Spec. Laws 103. The court rendered judgment determining that the plaintiff had no right of access. The plaintiff has appealed to this court from the judgment.

In one of its assignments of error, the plaintiff asserts that the court erred in refusing to find material facts as set forth in twenty-four paragraphs of

its draft finding. In and by other assignments of error, it contends that the court erred in finding facts without evidence. All of these claims are without merit. No correction can be made which is material to the appeal.

The court found that the Wilbur Cross Parkway, of which the Hartford by-pass is a part and on which the plaintiff's land abuts, was laid out and constructed as a parkway pursuant to Special Act No. 394 of the 1937 session of the General Assembly and Special Act No. 483 of the 1939 session. 22 Spec. Laws 789; 23 Spec. Laws 379. The parties had stipulated at the trial that the by-pass is part of the Wilbur Cross Parkway and that the parkway was designed and built pursuant to these special acts. Section 2257 of the General Statutes (formerly Cum. Sup. 1939, § 427e, as amended) defines the term "parkway" as a "trunk line highway . . . to which access may be allowed only at highway intersections designated by the highway commissioner and designed by him so as to eliminate cross traffic of vehicles." The plaintiff is the owner of two parcels of land located approximately north and south of Airport Road in Hartford. Both parcels are on the west side of the by-pass. Prior to 1944, the plaintiff's land and the land on which the portion of the by-pass in the area here involved was constructed were parts of a single tract owned by the city of Hartford. On December 30, 1940, the city and the state executed a written agreement. In its formal statement of purposes, the agreement recited that the state proposed to construct a trunk-line highway, including this portion of the by-pass. The express provisions of the entire agreement clearly indicate that access to and from the highway was to be limited. In fact, it was stated therein that "the State

agrees to construct and maintain said highway as a parkway." The city agreed to convey to the state "all of its right, title and interest" in and to certain land and in so far "as it has the power to do so, an easement or right-of-way for the highway upon and over" other land. The state agreed to construct a supplementary highway, Airport Road, between Wethersfield Avenue and the by-pass and to provide suitable grade separation structures "at the connection of said supplementary highway" with the by-pass. As is shown by the exhibits, and not disputed by the plaintiff, the state constructed the supplementary highway and provided access to the by-pass.

The construction of the parkway, including the by-pass, was completed in 1943. Thereafter, on May 29, 1944, the city, by quitclaim deed, the pertinent portions of which appear in the footnote,[1] remised, released and quitclaimed to the state all such right and title as it had or ought to have had in certain land, in-

---

[1] "Know all men by these presents, That The City of Hartford, a municipal corporation having its territorial limits within the County of Hartford and State of Connecticut, acting herein by William H. Mortensen, Mayor, hereunto duly authorized, for divers good causes and considerations moving, especially for one dollar and other valuable considerations received to its full satisfaction of State of Connecticut, has remised, released and forever quitclaimed, and does by these presents for itself and its successors, justly and absolutely remise, release and forever quitclaim unto the said State of Connecticut, its successors and assigns forever, all such right and title as it, said The City of Hartford has or ought to have in or to three (3) parcels of land lying in the South Meadows and described as follows: . . . .

"The Grantor further quitclaims and releases all its interest in and to the small parcel of land between the two sections of Airport Road where the highway bridge over the by-pass stands, but reserves the right for the public to pass and repass on foot and with vehicles over and across said highway bridge. . . .

"The land herein conveyed is subject to all rights [of] way or easements in addition to those mentioned above as of record may appear, including features described in an agreement between the

cluding the portion of the by-pass abutting on the property now owned by the plaintiff. The deed contained no provision for direct access from any of the abutting land remaining in the ownership of the city. In fact, the only reservation of any right of access to the by-pass is that which states that the city "reserves the right for the public to pass and repass on foot and with vehicles over and across" the highway bridge which had been constructed by the state in accordance with the agreement of December 30, 1940. The quitclaim deed was recorded on May 31, 1944.

In 1947, after the parkway, including the by-pass, had been constructed and in use for several years, the city quitclaimed to Peter M. Anselmo the land now owned by the plaintiff. Access to the land thus conveyed to Anselmo was and still is by way of Airport Road, an improved highway. During 1947 and 1948, buildings were constructed by the plaintiff or its predecessor in title on part of the land. The construction was so designed as to permit access to the buildings from Airport Road. No request was made at that time for direct access to the by-pass. The plaintiff's land is not landlocked, and the claimed right of direct access to the by-pass is not based on any claim of a right of way by necessity. On July 10, 1952, the plaintiff first sought permission from the highway commissioner for direct access from its

State of Connecticut and The City of Hartford, dated December 30, 1940.

"To have and to hold, the premises unto it, the said State of Connecticut and to its successors and assigns, to the only use and behoof of the said State of Connecticut, its successors and assigns forever, so that neither said The City of Hartford nor any other person or persons in its name and behalf, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they and every of them shall by these presents be excluded and forever barred."

land to the by-pass. The requested permission was refused.

Special Act No. 483 of the 1939 session, directing the highway commissioner to lay out the by-pass, was approved on June 20, 1939. 23 Spec. Laws 379. Section 427e of the 1939 Cumulative Supplement, effective on June 19, 1939, authorized the commissioner to lay out and construct highways, as an adjunct of any parkway, for the purpose of providing access from areas adjacent to the parkway, and "to purchase or take any land ... or rights in land necessary or required for the layout . . . of such parkways."

The plaintiff claims that, since its land abuts on the by-pass, the right of direct access is an existing easement appurtenant to its land. It bases this contention upon its assertion that the right of direct access came into being when the by-pass was constructed in 1943 and that the state has neither paid damages for the deprivation of the claimed right nor taken any steps to acquire it from the city or any subsequent owner. The answer to this contention is that the by-pass is not a conventional highway. The court found that it is part of a parkway. This finding, supported by the evidence and the stipulations of the parties, is controlling in this case. *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 692, 88 A.2d 379; *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 377, 44 A.2d 702; *Johnson* v. *Shattuck,* 125 Conn. 60, 62, 3 A.2d 229; Maltbie, Conn. App. Proc. (2d Ed.) p. 206, § 166. The highway commissioner is, by § 2257 of the General Statutes, authorized to prevent access to the by-pass except at highway intersections designated by him and so designed as to eliminate cross traffic of vehicles. Furthermore, the city, by the deed executed on May

29, 1944, "remised, released and forever quitclaimed" to the state "all such right and title as it," the city, had "or ought to have" had in and to the land described therein, on which the state had already constructed the by-pass as a limited access highway in accordance with the agreement of December 30, 1940. The agreement was specifically referred to in the deed. The quitclaim deed, read in the light of the written agreement and the statute giving the power to the highway commissioner to build the limited access highway, must be construed as a release and conveyance of every interest which the city might have claimed to have had. The plaintiff, therefore, does not have the right of direct access from its land to the by-pass.

There is no error.

In this opinion the other judges concurred.