# Richmond

**FRANK ERNEST CROSBY v. COMMONWEALTH OF VIRGINIA.**

April 22, 1963.

Record No. 5557.

Present, All the Justices.

The opinion states the case.

*Daniel Hartnett (Wescott B. Northam; Fears & Northam,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

Crosby was tried in the circuit court on the 20th day of June, 1962, on the charge of operating a truck at 56 miles per hour in a 45-mile zone, as determined by radar. The jury returned a verdict of guilty, imposing a fine of $15, upon which judgment was entered over the objection of the defendant, and we granted a writ of error.

Only two witnesses testified in the case—Trooper James Baird of the Virginia State Police on behalf of the Commonwealth, and defendant Crosby. The record contains an agreed stipulation disclosing that Trooper Baird testified that he was familiar with the operation of radar and that he, while working with Trooper Davis, set up a radar machine, used by the Virginia State Police, on the west side of U. S. Route 13 in Accomack County, for the purpose of clocking speed of traffic going south; that the State Police follow a regular procedure to test the accuracy of radar machines both before and after the same are put in operation at a given point; that the procedure used was to set up the equipment and allow a short time for it to "warm up", after which one officer would drive his automobile through the zone of operation at speeds of 70, 60 and 50 miles per hour, while the second officer would read the radar meter.

The trooper stated that the standard procedure was followed on the day of Crosby's arrest, and that after the machine was set up and allowed to "warm up" he drove his car through the zone of operation of the radar machine at speeds of 70, 60 and 50 miles per hour while Trooper Davis observed the speed on the radar meter; that at the conclusion of the operation Trooper Davis drove his automobile through the radar zone at speeds of 70, 60 and 50 miles per hour while he (Baird) read the radar meter.

At this point in Trooper Baird's testimony the Commonwealth's attorney asked him if the radar had been found to be accurate. Counsel for Crosby objected to the question in that it called for hearsay evidence. Defense counsel suggested that Trooper Davis should testify as to what speeds he drove his automobile through the zone of operation and what speeds he read on the radar meter when Baird's car was driven through the radar zone. The objection was overruled and counsel for defendant excepted. Trooper Baird then testified that on both tests the radar was operating properly.

Trooper Baird stated that he was observing the radar speed meter when Crosby drove his truck through its zone of operation and that the radar meter indicated that the truck was traveling at a speed of 56 miles per hour; that he pursued the truck and arrested Crosby, charging him with speeding.

At the conclusion of Trooper Baird's testimony the Commonwealth rested its case and counsel for Crosby moved to strike the evidence on the ground that it was hearsay and inadmissible. The motion was overruled and exception duly noted.

Crosby, testifying in his own behalf, stated that the speedometer on his truck was operating in "an erratic manner;" that it was impossible to determine from his speedometer what speed he was traveling but that he estimated his speed to be 45 miles per hour, and that he was trying not to exceed this speed because he knew that to be the speed limit.

After the verdict, counsel for Crosby moved that it be set aside on the ground that it was contrary to the law and the evidence as the evidence of Trooper Baird was hearsay and inadmissible.

The sole question before us is—Did the testimony of Trooper Baird concerning that part of the radar accuracy test performed by Trooper Davis constitute hearsay evidence?

In approaching a decision in this case we fully appreciate the fact that devices such as radar are necessary for efficient law enforcement, but this necessity does not abrogate any of the rules of evidence established by either the common law or statutory law of this Commonwealth. Our court has recognized not only the necessity to carry out tests for accuracy on radar machines before and after they are used, but also the necessity of proving such tests by proper evidence in a subsequent prosecution for speeding.

In *Royals* v. *Commonwealth* (1957), 198 Va. 883, 96 S. E. 2d 816 (the second Royals case),[1] we reversed the conviction of speeding on the ground that the trooper testifying on behalf of the Commonwealth as to the accuracy of the radar machine said that he understood the machine had been properly tested but that he had no firsthand or actual knowledge of the test. In that case we said:

"This testimony is not based on the personal knowledge of the witnesses and is clearly hearsay or mere deductions drawn by them. A person accused of violating a criminal law is entitled to be confronted by his accusers, and he cannot be lawfully convicted on hearsay evidence or inferences deduced by witnesses." 198 Va., at page 885, 96 S. E. 2d, at page 818.

Applying this rule in the instant case, it was hearsay for Trooper Baird to testify as to what the reading was on a radar speed meter situated on the ground when he was in his car driving past the meter at speeds of 70, 60, and 50 miles per hour. Conversely, it would be hearsay for an officer to testify as to what the reading was on the speedometer of a test car when that officer was situated on the ground observing the radar speed meter.

---

[1] See also *Royals* v. *Commonwealth*, 198 Va. 876, 96 S. E. 2d 812 (the first Royals case).

The trial court in ruling that such testimony was admissible treated the accuracy test as one operation thereby obviating the necessity for both troopers involved to testify. If one officer can testify not only as to the readings he personally made but also as to the readings that a second officer observed out of his presence, this would obviously have the effect of the officer surmising that such test for accuracy was carried out, thus violating the rule laid down in the second *Royals* case, *supra*.

Apparently it would have been a simple matter for the Commonwealth to have produced Trooper Davis who was collaborating with Trooper Baird to prove the accuracy of the test of the radar machine, thus giving the defendant an opportunity to examine both officers as to the sufficiency of the test they performed. Crosby was denied this opportunity through the improper admission of hearsay evidence.

The Attorney General insists in his brief that "(I)f it is shown that the radar machine was in fact functioning, the statute [§ 46.1-198, Code of Virginia, 1950, as amended] makes the functioning *prima facie* correct." Such argument is in direct conflict with our holding in the *Royals* case, *supra*, 198 Va. 883, 96 S. E. 2d 816.

While the statute provides "\* \* \* such checks will be accepted as *prima facie* evidence of the speed \* \* \*", it contemplates that the radar equipment has been checked to insure accuracy, and the burden of showing the accuracy of the radar machine was on the Commonwealth, which burden the Commonwealth assumed in seeking a conviction in this case. *Royals* v. *Commonwealth*, 198 Va. 876, 96 S. E. 2d 812; *Royals* v. *Commonwealth*, *supra*, 198 Va. 883, 96 S. E. 2d 816.

For the reasons stated the judgment of the trial court is reversed, the verdict of the jury is set aside, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*