## Richmond

WILLIAM WILSON HOWELL V. COMMONWEALTH OF VIRGINIA.

March 5, 1973.

Record No. 8064.

Present, All the Justices.

James M. Minor, Jr. (Minor, Thompson, Savage, Smithers and Benedetti, on brief), for plaintiff in error.

A. R. Woodroof, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.

Per Curiam.

On January 28, 1972, on a trial *de novo* following appeal from the Hanover County Court, William Wilson Howell was convicted by the trial court sitting without a jury of operating a motor vehicle at a speed of 78 miles per hour in a 65 mile per hour zone and fined $25.00 and costs.

To the final judgment order we granted a writ of error addressed to the question whether the Certificate of Radar Accuracy Test is sufficient to support the conviction.

Trooper Hendricks testified that a radar device had been properly erected and tested for accuracy before and after it registered Howell's speed. He then submitted Department of State Police Certificate of Radar Accuracy Test, form SP 151-A, Rev. 4-26-71, which was admitted in evidence over Howell's objection. Trooper Hendricks was not present when the tests of the radar device were conducted and

had no personal knowledge of the accuracy of the speedometers on the two test vehicles.

The statistical test results assembled in the certificate show that the radar device was tested by State Troopers Howard and Sulik driving two police vehicles through the radar beam at different speeds three times before and three times after Howell's speed was registered. In each of the six tests, the speedometer reading was identical to the radar reading.

Beneath the statistical test results and over the signatures of Troopers Howard and Sulik was the following certification:

"We, the undersigned, certify that we conducted the accuracy test of the radio microwave (radar) device shown above by use of State Police vehicle the speedometer of which had been calibrated and found to be accurate and the information herein is a complete and accurate record of the results of said test."

Code § 46.1-198(a) makes the results of radar speed checks prima facie evidence of speed.

In 1968 the General Assembly added part (a1) to authorize the use of a sworn certificate of accuracy of the radar device as evidence in lieu of the parol testimony of the police officers who conducted the test. Part (a1) provides:

"In any court or legal proceedings in which any question arises as to the calibration or accuracy of any such radio microwave or other electrical device, a certificate, executed and signed by the officers calibrating or testing such device as to its accuracy as well as to the accuracy of the speedometer of any motor vehicle used in such test, and stating the time of such test, type of test and results of testing, shall be admissible when attested by one such officer who executed and signed it as evidence of the facts therein stated and the results of such testing."

Howell argues that the certificate used against him does not comply with the statute as construed in *Sweeny* v. *Commonwealth*, 211 Va. 668, 179 S.E.2d 509 (1971); that the statement in the certificate that the speedometers had been "calibrated and found to be accurate" was a conclusion of the attesting officers unsupported by evidence reflected in the certificate; and that "the court convicted the defendant

with no evidence as to the accuracy of the speedometers on the test vehicles."

We do not agree.

Code § 46.1-198 (a1) makes the certificate "admissible . . . as evidence of the facts therein stated. . . ." In *Sweeny* we held that the statute requires that the certificate state not only the fact that the speedometer of the test vehicle had been calibrated, but also the fact that after calibration the speedometer was found to be accurate. The certificate here states both facts.

Howell contends that the latter statement was a statement of opinion rather than a statement of fact. The statement did not state that the attesting officers "believed" the speedometer to be accurate but that *after calibration* the officers *found* the speedometer to be accurate. Apparently Howell reads the statute to require that, with respect to the accuracy of the speedometer, the certificate must reflect "the time of such test, type of test and results of testing". We do not so read the statute. The test antecedent to the singular words "test" and "testing" used in these several requirements is the test of the radar device; there is no prior mention of a test of a speedometer. All the statute requires is that the certificate reflect a factual finding "as to the accuracy of the speedometer of any motor vehicle used" in testing the radar device.

Although it is unnecessary to our holding, we note that the certificate here goes beyond the strict requirements of the statute and reflects data supporting the factual findings of accuracy of the speedometers. Not one but two test vehicles were employed. Three speed-measuring instruments were used in compiling the statistical test results reported in the certificate. The first two, the speedometers, agreed independently with the radar devices in every test run. Things equal to the same thing are equal to each other. And while possible, it is improbable that all three speed-measuring instruments would have been inaccurate to precisely the same degree.

The judgment is affirmed.

*Affirmed.*