135 N.J. Super. 443 (1975)
343 A.2d 516
STATE OF NEW JERSEY, PLAINTIFF,
v.
DONALD S. OVERTON, DEFENDANT.
Superior Court of New Jersey, Sussex County Court.
July 1, 1975.
*445 Mr. Jared L. McDavit for plaintiff (Mr. George T. Daggett, Sussex County Prosecutor, attorney).
Mr. R. Webb Leonard for defendant (Messrs. Busche, Clark & Leonard, attorneys; Mr. Leonard on the brief).
STEIN, J.C.C.
This case involves the question of what proofs are sufficient to establish the accuracy of a radar speed-measuring device.
Defendant was convicted in the Sparta Township Municipal Court of operating his motor vehicle at 47 m.p.h. in a 35-mile zone. N.J.S.A. 39:4-98. There followed this appeal, which was heard de novo on the transcript of the proceedings below.
Proof of defendant's speed was the reading obtained from a Mark VI-A radar traffic device. The summons was issued by Sergeant Smith of the Sparta Township Police Department, who was admittedly trained and qualified in the theory, proper operation and calibration of this radar device. Sergeant Smith testified that defendant was travelling southerly on East Shore Road where his vehicle was clocked at the 47 m.p.h. speed.
For 20 years the New Jersey courts have taken judicial notice of the general accuracy of radar speed-measuring devices. State v. Dantonio, 18 N.J. 570, 575-583 (1955). Proof of the accuracy of the particular scientific measuring device used is, however, required as a prerequisite to the admissibility of the results obtained therefrom. State v. Finkle, 128 N.J. Super. 199, 207 (App. Div. 1974), *446 aff'd o.b. 66 N.J. 139 (1974) (VASCAR); cf. State v. Johnson, 42 N.J. 146, 171 (1964) (drunkometer); State v. McGeary, 129 N.J. Super. 219, 224 (App. Div. 1974) (breathalyzer).
Sergeant Smith affirmed his knowledge of the three universally accepted methods of testing the accurate operation of radar:
1. By use of the internal tuning fork built into the machine itself. Sergeant Smith testified that activation of the internal tuning fork was not used by him as a method of testing the machine's accuracy, but simply to determine that "the machine is warmed up sufficiently and is operating as per the way it was designed." Indeed, the sole use of the internal tuning fork as evidence of the machine's accuracy would be most suspect. Such testing of the machine by the machine itself has been condemned by the Minnesota Supreme Court as "bootstrapping." State v. Gerdes, 291 Minn. 353, 191 N.W.2d 428, 431 (Sup. Ct. 1971).
2. By running a patrol car, with a calibrated speedometer, through the "zone of influence" of the radar machine. This was not done in this case.
3. By the use of external tuning forks calibrated at set speeds and which emit sound waves or frequencies identical to those which would come from a vehicle travelling through the radar at the same speed for which the tuning fork has been cut. This was the sole method employed in this case to test the radar set's accuracy.
Defendant was issued his summons for speeding at approximately 1:45 P.M. Sergeant Smith testified that he tested the radar machine three times at the same location: twice shortly before issuing defendant a summons, at 12:35 P.M. and at 1:35 P.M.; and once just after he apprehended defendant, at 2:04 P.M. On each of these three occasions four tuning forks were used to test the radar unit. These forks were calibrated at 20, 40, 60 and 80 m.ph., respectively. On each occasion each tuning fork was held in front of the radar *447 antenna mounted in the police patrol vehicle. The fork was then struck upon a wooden mallet, thereby emitting a "tone" or sound wave. When the 20-mile fork was struck, the radar unit read 20 m.p.h.; the 40-mile fork caused a 40 m.p.h. reading; the 60-mile fork, a 60 m.p.h. reading, and the 80-mile fork, an 80 m.p.h. reading on the unit.
The sole question before this court is whether the external tuning fork test was sufficient to establish the accuracy of the radar unit.
At the trial below the municipal judge permitted the introduction into evidence of certain certificates issued by the manufacturer of the tuning forks and the radar unit. These certificates, supposedly signed by a representative of the manufacturer, purported to show that each of the four tuning forks had been tested, and that each fork was accurate within plus or minus 0.1 percent. Admission of these documents into evidence was error. These "certificates" were not properly authenticated,[1] as required by Evid. R. 67 nor was there sufficient testimony to support their admissibility as either business records under Evid. R. 63(13) or as reports of findings of a public official under Evid. R. 63(15). State v. Conners, 129 N.J. Super. 476, 485 (App. Div. 1974).
Defendant contends that this failure to prove the accuracy of these tuning forks is fatal to the State's case. He would require the State to prove not only the correctness of the machine which clocked his speed as excessive  he demands testing as well of the device used to check the accuracy of the radar unit. The argument is unsound. There is no need to place such undue burdens upon the State in proving a simple speeding case. Defendant's argument is best answered by the response to the same type of reasoning *448 in People v. Stephens, 52 Misc.2d 1070, 1072, 277 N.Y.S. 2d 567, 569-570 (Cty. Ct. 1967):
* * * [T]his court is not prepared to cast the burden on the People of offering proof of the accuracy of both the calibrated tuning fork and the speedometer of the test car beyond the simple comparative analyses made in the instant case. Beyond such simple tests must lie tests of the devices used to test other measuring devices. Beyond these tests must lie metal fatigue tests, conductivity tests, and electrical time-lag tests involving the variant components used in all of the testing devices, and so on and on. These tests must end somewhere. The oft-heard layman's opinion that the enforcement of the law can be frustrated by a "legal bag of tricks" must not be encouraged by slavish adherence to hypertechnical requirements of myriad testings of the components of every device used to measure accuracy of every other measuring device.
A similar argument was also rejected by the Supreme Court of Virginia in Farmer v. Commonwealth, 205 Va. 609, 139 S.E. 2d 40 (1969). Defendant there claimed that proof of accuracy of the radar unit required the prosecution to establish the accuracy of the tachometer which had been used to calibrate the speedometer on the test car which had passed through the radar beam. The court expressed its fear that the next logical requirement would be proof of the accuracy of the instrument or instruments which tested the tachometer. Common sense, reasoned the court, demanded that there be "a point of faith somewhere." 205 Va. at 610, 139 S.E.2d at 42-43.
Defendant next argues that accuracy of radar units would be best proved by periodic inspections by an agency such as the State Police. Qualified testing personnel could then issue certificates of good working order for each machine which could qualify as business records under Evid. R. 63 (13), or as official reports under Evid. R. 63 (15). This is the method of certifying accuracy of breathalyzer machines in drinking-driving cases. State v. Conners, supra; State v. McGeary, supra; cf. State v. Kalafat, 134 N.J. Super. 297, (App. Div. 1975), indicating that such certificates should be offered as reports of public officials under Evid. R. 63 (15).
*449 The soundness or feasibility of such a spot-checking procedure is somewhat questionable. Unlike breathalyzer machines, radar units are frequently moved from place to place. There is authority to the effect that a radar unit should be checked for accuracy each time that it is set up for use at a different location. Kopper, "The Scientific Reliability of Radar Speedmeters," 33 N. Car. L. Rev. 352, 353 (1955), cited with approval in City of St. Louis v. Boecker, 370 S.W.2d 731, 735 (Mo. Ct. App. 1963).
Defendant further urges that, at the very least, the external tuning forks used to check the machine's accuracy should be subject to periodic inspections by an official agency. Such a procedure commends itself as tending to promote such worthy objectives as simplicity, efficiency and reliability. However, it is not the function of this court to mandate accepted procedures for testing the accuracy of particular speed-measuring devices. The function of this court is simply to determine whether the particular test utilized was of sufficient reliability to prove that the scientific measuring device was accurate at the time of its operation.
Research discloses no New Jersey case dealing specifically with the question of what proofs are required to establish the accuracy of a particular radar unit. Other jurisdictions have dealt with the question. Annotation, "Proof by Radar or Other Mechanical or Electrical Devices of Violation of Speed Regulations," 47 A.L.R.3d 822 (1973).
The use of one or more external tuning forks in connection with other testing devices has generally been found to be sufficient proof of a radar machine's accuracy at the time of operation. People v. Johnson, 23 Misc.2d 11, 196 N.Y.S.2d 227 (Cty. Ct. 1960) (one external tuning fork, and the driving of a test car with an uncalibrated speedometer through the radar machine's "zone of influence"); People v. Lynch, 61 Misc.2d 117, 304 N.Y.S.2d 985 (Cty. Ct. 1969) (two external tuning forks, and internal test calibration of the radar machine itself).
*450 The use of multiple external tuning forks has been held to be sufficient evidence of the radar unit's accuracy particularly where the forks themselves have been tested. Kansas City v. Hill, 442 S.W.2d 89 (Mo. Ct. App. 1969) (one 35-mile fork, and one 50-mile fork).
At least one jurisdiction has permitted a speeding conviction to stand where only one tuning fork was used to test the radar machine. People v. Abdallah, 82 Ill. App.2d 312, 226 N.E. 2d 408 (App. Ct. 1967). Such proof has elsewhere been held to be insufficient evidence of accuracy. In People v. Martirano, 52 Misc.2d 64, 275 N.Y.S.2d 215 (Cty. Ct. 1966), the court held:
* * * In this case there is no proof that the tuning fork was accurate. It is certainly not beyond the realm of possibility that its pitch had been some way affected so that it was no longer an accurate fork. The fork is a so-called 40 m.p.h. fork and when it was used the radar unit registered a speed of 40 m.p.h. It is not inconceivable that the unit and the fork were inaccurate to and in the same degree.
Analysis of the numerous decisions in other jurisdictions mandates against slavish adherence to magic "formulas" or "rules of thumb" to establish reliability of speed-measuring devices. Readings of radar and other speed-measuring machines should be admissible if there is reasonable proof of their accuracy. Such proof has been established in the record before this court.
Applicable to this case is People v. Stephens, supra. The testing methods used were a 50-mile tuning fork, and the running of a test car at 50 m.p.h. through the radar zone of influence. These tests were conducted shortly before and shortly after defendant's vehicle was apprehended. On each occasion, and for each test, the radar unit produced a reading of 50 m.p.h. In upholding the speeding conviction, the court stated:
In the instant case this court is compelled to hold that it is more than coincidence four testings of the radar device indicated a speed of fifty miles per hour. To this court it is inconceivable the radar *451 unit, the 50 MPH tuning fork and the test car speedometer could all be inaccurate to and in the same degree. [52 Misc.2d at 1072, 277 N.Y.S.2d at 569; citations omitted.]
In this case the four external tuning forks were used to test the radar unit a total of 12 times within a period of approximately 90 minutes. Eight tests were made of the unit shortly before defendant's vehicle was stopped, followed by four tests shortly thereafter. Three tests by each of the four forks produced a radar reading identical to that for which each particular fork was calibrated. As in Stephens, supra, it is inconceivable that these four tuning forks  calibrated at 20, 40, 60 and 80 m.p.h.  could all be inaccurate to the same degree as the radar unit they were designed to test.
The proofs in this case clearly demonstrate the accuracy of the radar unit which clocked defendant's vehicle travelling at an excessive rate of speed. Logic and reason dictate no other result.
There is no merit to defendant's argument that, while he did not check his speedometer, he had lived in the area for 18 years and, because of his familiarity with traffic and parking conditions, he was driving slowly at the time of his apprehension and was certain that he did not exceed the posted speed limit.
Defendant is found guilty of operating his motor vehicle at 47 m.p.h. in a 35-mile zone, in violation of N.J.S.A. 39:4-98.
There will be a fine of $12, plus $10 costs of the Sparta Township Municipal Court, and an additional $7.50 costs of this court.
NOTES
[1] Sergeant Smith, the State's only witness, was unable to identify the signature of the representative of the manufacturer who executed the certificates.