The defendant has appealed from his conviction of speeding in violation of General Statutes14-219, which prohibits the operation of a motor vehicle at a rate of speed greater than fifty-five miles per hour upon any highway. The issues raised are (1) the admissibility of evidence concerning the accuracy of the speedometer reading made by the arresting officer and (2) the sufficiency of the evidence to prove the defendant's guilt beyond a reasonable doubt.
At the trial a police officer testified that he followed the defendant's car from a traffic light on route 44 in Avon as it proceeded easterly and that he "clocked" it for a distance of two-tenths of a mile at a speed of sixty-seven miles per hour.
Before the officer testified about the speed of the defendant's vehicle as indicated by the speedometer in the police cruiser, he stated that he had calibrated or checked that instrument by using a speed gun radar unit which operates independently of the speedometer. He said that this radar unit would give a reading for the speed of the police car containing the device as it traveled. A comparison of the radar unit reading and that of the speedometer two days before the defendant's arrest indicated that the speedometer reading was one mile per hour less than the radar unit reading.
The officer testified that on the same day he calibrated the speedometer of the police cruiser he also checked the accuracy of the radar unit with a tuning fork stamped to indicate a certain speed in miles per hour to which the reading on the radar device should correspond when the tuning fork was vibrated. This test indicated that the radar device was accurate. The officer testified further that on October 28, 1980, *Page 603 
seven days after the arrest of the defendant, the speedometer of the police cruiser was again checked and found to be accurate using the same testing procedure.
After this preliminary foundation had been presented by the state, the police officer, over the defendant's objection, was permitted to testify that his speedometer gave a reading of sixty-seven miles per hour during his "clock" of the defendant's car. The defendant's objection was based upon General Statutes 14-219c, which provides for a prima facie presumption of the accuracy of radar sufficient to support a speeding conviction where five conditions are fulfilled. Subsection (4) of that statute, on which the defendant relies, requires as one of the conditions for the presumption that "as to moving radar, the speed of the patrol car [be] verified." The trial court overruled this objection upon the ground that the statute referred only to an arrest based wholly upon a radar reading and not to a case where the testimony concerning speed depended upon a speedometer reading. We think this ruling was correct because the statute does not purport to create any prima facie presumptions with respect to the accuracy of a speedometer. Furthermore, the fact that a prima facie presumption is created by the statute if the several conditions required are proved does not mean that evidence falling short of establishing those conditions must be excluded if it would be otherwise admissible. The defendant confuses the admissibility of evidence with its weight.
The defendant also objected to the officer's testimony concerning the speed indicated by his speedometer on the ground that there was insufficient evidence of the accuracy of that instrument.[1] In State *Page 604 
v. Tomanelli, 153 Conn. 365, 216 A.2d 625 (1966), upon which the defendant relies, the court in discussing the use of radar devices for measuring speed observed that the accuracy of the instrument and its operation must be demonstrated before the evidence it has produced becomes admissible. This rule is merely an application of the general principle that an adequate basis for his knowledge of a fact must be established before a witness may testify to the fact. 2 Wigmore, Evidence (3d Ed.) 650. The quantum of evidence required to pass the threshold of admissibility must be distinguished from that required to establish a prima facie case or to satisfy the requirement of proof beyond a reasonable doubt in a criminal case. 1 Wigmore, Evidence (3d Ed.) 29. It has been suggested that common knowledge of the general accuracy of instruments in widespread use, such as speedometers, is a sufficient basis for admissibility. City of Spokane v. Knight, 96 Wash. 403,405, 165 P. 105 (1917); People v. Marsellus,2 N.Y.2d 653, 655, 143 N.E.2d 1 (1957); People v. Tyler, 109 N.Y.S.2d 756, 757 (App.Div. 1952); Nicholas v. Penny, [1950] 2 K.B. 466, 469; see annot., 21 A.L.R.2d 1200. It is probably salutary, however, to require in speeding prosecutions some showing of accuracy preliminary to admissibility whenever seasonable objection is raised, as the usual practice in this state has been. State v. Pontillo, 5 Conn. Cir. Ct. 332, 336, 252 A.2d 141 (1968); State v. Ellis, 5 Conn. Cir. Ct. 190, 191, 248 A.2d 71 (1968); State v. Lane, 4 Conn. Cir. Ct. 368, 371, 232 A.2d 518 (1967); cf. State v. Tarquinio, 3 Conn. Cir. Ct. 566, 568, 221 A.2d 595 (1966). The testimony of the officer that the speedometer had been recently tested by means of the radar device and found to be accurate would easily satisfy this minimal requirement for admissibility. The coincidence of similar readings obtained from two independent measuring instruments in common experience tends to indicate the accuracy of each. *Page 605 
The additional testimony that the radar device had been tested by the use of a tuning fork was also supportive. The defendant has attacked the sufficiency of this evidence to prove the accuracy of the radar unit, relying upon dictum in State v. Tomanelli, supra, 372, that "the tuning forks themselves must be shown to be accurate if they are to be accepted as a valid test of the accuracy of the radar instrument." To the extent that this statement may imply that a test of the accuracy of a tuning fork is necessary as a further check upon the radar device before its reading becomes admissible, we do not agree. A tuning fork is a two-pronged metal implement not affected by moderate differences of temperature which vibrates with a constant frequency when struck. Webster, Third New International Dictionary. The tuning fork referred to by the officer was stamped for fifty miles per hour, the speed corresponding to its frequency. Unlike some other measuring devices, it requires no adjustment. There is little more reason to require independent proof of its accuracy as a prerequisite to admissibility than for a ruler.
With respect to the sufficiency of the evidence to support the speeding conviction of the defendant there can be no question. The verification of the accuracy of the speedometer by the radar device, which had also been checked by the use of a tuning fork, the tests having been performed both a few days before and a few days after the arrest, was strongly corroborative. Any minor inaccuracy would not be significant since the evidence indicated a speed twelve miles per hour in excess of the statutory limit. There was additional testimony by the officer that the tuning fork he used in testing the radar device had been tested for accuracy with a primary source maintained by the Bureau of Standards in Colorado two months after the arrest and that it was found to be accurate to within thirty thousandths of a mile per hour. He *Page 606 
also testified that his visual observation of the defendant's car indicated a speed in excess of fifty-five miles per hour based upon his experience. Squires v. Reynolds, 125 Conn. 366,368, 5 A.2d 877 (1939). The only evidence offered by the defendant with respect to his speed was his denial that he had exceeded fifty-five miles per hour, which was unsupported by any reference to his own speedometer. The evidence sufficiently supports the finding of the trial court.
 There is no error.
In this opinion ARMENTANO and BIELUCH, Js., concurred.