Cheshire
No. 81-220

THE STATE OF NEW HAMPSHIRE

v.

PATRICIA M. AHERN

August 17, 1982

*Gregory H. Smith*, attorney general (*Peter C. Scott*, assistant attorney general, on the brief and orally), for the State.

*Holland & Aivalikles*, of Nashua (*William E. Aivalikles* on the brief and orally), for the defendant.

BOIS, J.    The defendant appeals from a non-jury trial in Superior Court (*Bean*, J.), in which she was found guilty of operating a motor vehicle in excess of the speed limit. *See* RSA 265:60. We affirm the trial court's decision.

On January 4, 1980, the defendant was charged with operating her motor vehicle at a speed of seventy-four miles per hour in a fifty-five-mile-per-hour speed zone. At trial, the State troopers who had stopped the defendant testified that they had clocked her on radar as having been driving at seventy-four miles per hour. In addition, one of the troopers testified that, based on his visual observations, he believed the defendant was traveling well above sixty-five miles per hour. The defendant objected to this testimony, claiming that the State had failed to lay a proper foundation for the evidence. The trial court overruled the defendant's objections and denied her subsequent motion to dismiss. Following the rendering of a guilty finding, the defendant appealed to this court.

█    The defendant's argument rests upon the fundamental principle that the results of scientific tests are inadmissible unless there is proof that the test device was operating accurately and that the test was performed by qualified individuals. *See* J. WIGMORE, THE SCIENCE OF JUDICIAL PROOF § 220, at 450 (3d ed. 1937); *see also State v. Wojtkowiak*, 170 N.J. Super. 44, 46, 405 A.2d 477, 478 (Law Div. 1979), *rev'd on other grounds*, 174 N.J. 460, 416 A.2d 975 (App. Div. 1980); *State v. Blaney*, 284 S.E.2d 920, 924 n.3 (W. Va. 1981).

*See generally State v. Roberts*, 102 N.H. 414, 415–16, 158 A.2d 458, 459–60 (1960).

■ The defendant first contends that the State failed to offer sufficient evidence concerning the qualifications of the trooper who operated the radar machine. The testimony, however, revealed that the operator of the radar had been a State trooper for approximately four years prior to the day in question and that he had initially spent eight weeks at the New Hampshire State Police Academy. The evidence indicated that the trooper was familiar with the use of radar and that he had often correctly set up and tested radar equipment. The evidence also showed that the trooper had completed a two-day course and was certified in operating radar. Although it was not clear whether the trooper had completed the two-day course and received his certification prior to the day in question, we hold that the other evidence before the court sufficiently established the officer's qualifications to operate the radar equipment.

The defendant further argues that the trial judge erred in admitting the results of the radar unit because the State allegedly failed to introduce evidence regarding the accuracy of the unit on the day in question. Specifically, the defendant contends that the State demonstrated neither that the radar unit was properly calibrated, nor that the tuning forks, the instruments used to test the unit, were accurate.

■■ We reject this argument. The trooper who set up the radar testified that he had calibrated the unit before and after the alleged violation and that he had followed the procedural steps printed on the outside of the radar equipment. He gave detailed testimony regarding these procedures, and he stated that the results of the testing led him to believe that the unit was working properly. Although some inconsistencies existed in the trooper's testimony as to whether he had followed the precise testing procedures recommended by the manufacturer of the radar unit, we hold that the trial judge, who as trier of fact had the responsibility to resolve such inconsistencies, *see State v. Underwood*, 110 N.H. 413, 415, 270 A.2d 599, 601 (1970); *see also State v. Buckingham*, 121 N.H. 339, 342, 430 A.2d 135, 137 (1981), could rationally have concluded that the trooper followed the recommended procedures. *Cf. Stevens v. Rye*, 122 N.H. 688, 690, 448 A.2d 426, 428 (1982).

■ The evidence revealed that two external tuning forks, set at different speeds, were used to test the accuracy of the radar unit. In line with the clear modern trend of authority, we hold that the use of two tuning forks provided sufficient assurance that the tuning

forks themselves were accurate, because each tuning fork corroborated the accuracy of the other, and it was highly unlikely that the radar unit and both tuning forks would have been inaccurate to the same degree. *See People v. Walker*, 610 P.2d 496, 499–500 (Colo. 1980); *State v. Readding*, 160 N.J. Super. 238, 243, 389 A.2d 512, 515 (1978); *State v. Kramer*, 99 Wis. 2d 700, 706, 299 N.W.2d 882, 885–86 (1981). For this reason, we conclude, contrary to the defendant's argument, that the State was not required to introduce extrinsic evidence regarding the accuracy of each tuning fork. Because we have found that the radar results constituted admissible evidence, we need not discuss the defendant's final argument that visual observations alone are insufficient to sustain a conviction of speeding.

*Affirmed.*

All concurred.