198 Va. 876 (1957)
CLYDE R. ROYALS
v.
COMMONWEALTH OF VIRGINIA.
Record No. 4626.
Supreme Court of Virginia.
March 11, 1957.
John Y. Hutcheson (James E. Edmunds, III; Edwin A. Crowder; Ferguson, Yates & Stephens, on brief), for the plaintiff in error.
Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and
1. Defendant was convicted of driving at an excessive rate of speed on evidence consisting only of the testimony of a state trooper that while the trooper was operating a radar machine defendant drove through the machine's zone of operation at a speed indicated by the machine to be 64 miles per hour. Defendant and his wife both denied he was exceeding the lawful limit of 55 miles per hour. On appeal the court adhered to prior decision that Code 1950, section 46-215.2, which authorized the use of evidence of speed measured by radar device, is a constitutional and valid statute.
2. Defendant's contention that the statute required the Commonwealth to procure a mechanical record of the speed of vehicles as registered by the radar and to introduce in evidence a graph of such speed was without merit. Testimony of the persons who observed the speed registered by the machine is sufficient.
3. Proof that radar warning signs had been posted around the town of South Boston, near which defendant was arrested, and that defendant had actual knowledge that the machine was being operated there met the requirement of paragraph (c) of section 46-215.2 relative to the posting of warning signs.
4. The conviction of defendant was set aside, however, because the prosecution failed to show that the radar machine was properly set up and tested. The statute has eliminated the necessity of proving in each case by expert witnesses the theory of operation of the machine, but not the need to prove that the particular machine was operating properly. Absent proof of this fact, evidence of speed as registered by the machine was inadmissible.
Error to a judgment of the Circuit Court of Halifax county. Hon. G. E. Mitchell, Jr., judge presiding. The opinion states the case.
C. F. Hicks, Assistant Attorney General, (J. Lindsay Almond, Jr., Attorney General, on brief), for the Commonwealth.
HUDGINS
HUDGINS, C.J., delivered the opinion of the court.
This writ of error brings under review a judgment entered on a verdict finding Clyde R. Royals, hereinafter designated defendant, guilty of operating his automobile at an excessive rate of speed and imposing a fine of $20.00.
The only evidence tending to prove that defendant was driving at an unlawful rate of speed is the statement of C. H. Coleman, a state trooper, who testified that at 4:50 P.M. on January 14, 1955, he was operating a radar machine on U.S. Route 58 a few miles east of South Boston, Virginia, and that when defendant, proceeding west, went through the machine's zone of operation the speedmeter indicated that he was traveling at 64 miles per hour in a 55 miles per hour zone. Defendant testified that on this occasion he was paying particular attention to his speedometer and did not drive in excess of 55 miles per hour; that the speedometer in his automobile was accurate, it having been calibrated at the Southern Motor Company in Hampton, Virginia. Defendant's wife, who was riding with him, testified that she "noticed the speed on our trip all the way and I never noticed him to be over 55" and that at the time her husband was arrested he was not traveling over 55 miles per hour. The jurors by their verdict indicated that they believed the testimony for the Commonwealth and disbelieved that for the defendant.
 Defendant's first contention is that the statute, Code, | 46-215.2, (Chapter 313, Acts of 1954), under which he was convicted is invalid and void in that it deprives him of the right to be confronted with his accusers and hence violates | 8 of the Virginia Constitution. *878 The provisions of this statute at the time of defendant's arrest were as follows:
"(a) The speed of any motor vehicle may be checked by the use of radiomicro waves or other electrical device. The results of such checks shall be accepted as prima facie evidence of the speed of such motor vehicle in any court or legal proceedings where the speed of the motor vehicle is at issue."
"(b) The driver of any such motor vehicle may be arrested without a warrant under this section provided the arresting officer is in uniform or displays his badge of authority; provided that such officer has observed the recording of the speed of such motor vehicle by the radiomicro waves or other electrical device, or has received a radio message from the officer who observed the speed of the motor vehicle recorded by the radiomicro waves or other electrical device; provided in case of an arrest based on such a message that such radio message has been dispatched immediately after the speed of the motor vehicle was recorded and furnished the license number of the vehicle and the recorded speed to the arresting officer."
"(c) No operator of a motor vehicle may be arrested under this section unless signs have been placed at the State line on the primary highway system, and outside cities and towns having over 3500 population, on the primary highways to indicate the legal rate of speed and that the speed of motor vehicles may be measured by radiomicro waves or other electrical devices."
"(d) Nothing herein shall affect the powers of cities or towns to adopt and use such devices to measure speed."
The constitutionality of this statute was raised and decided adversely to defendant's contention in Dooley Commonwealth, 198 Va. 32, 92 S.E.2d 348. Suffice it to say, without extended discussion, that we adhere to that decision and reaffirm the constitutionality of the statute.
 There is no merit in defendant's next contention that the statute requires the Commonwealth to procure a mechanical record of the speed of the motor vehicle as registered by the radar set and to introduce in evidence a graph of such speed. It is sufficient to point out that the statute contains no such requirement. The radar machine measures the rate of speed of the motorist passing within its zone of operation. The result of this measurement may be established either by a graph of a mechanical recorder properly identified or by *879 the testimony of the officers who observed the speed registered by the radar machine.
 Defendant also contends that proof of the posting of the warning signs as required by paragraph (c) of Code, | 46-215.2 is a condition precedent to his conviction and that inasmuch as the Commonwealth failed to prove compliance with this provision his conviction is illegal.
The object of this provision of the statute is to eliminate the possible contention that the use of radar to determine a motorist's rate of speed is an entrapment and creates a feeling of hostility between the motoring public and the police officers. Posting of the required signs gives every motorist using the highway between signs a fair warning that radar may be in use and that he violates the speed limit at his peril. Knowledge of the fact that radar may be used on the highway has a tendency, sometimes unconsciously, to deter motorists from driving at an unlawful speed.
The Commonwealth proved that the required signs were posted on the highway in and around South Boston, a town having a population in excess of 3,500. Furthermore, defendant admitted that he was informed at a service station just prior to his arrest that radar was being used west of him on Route 58. Thus he had constructive notice from the signs posted on Route 58 around South Boston, and actual knowledge that officers were using radar on this particular highway to measure the speed of motorists. Proof of these two facts shows sufficient compliance with this provision of the statute. See, Mitchell Wilkerson,
193 Va. 121, 67 S.E.2d 912. However, it should be noted that there has been a substantial change in this provision of the statute by the 1956 amendment, (Chapter 216, Acts of 1956), which added the following: "there shall be a prima facie presumption that such signs have been so placed, and a certificate of the State Highway Commissioner as to the placing of such signs shall be admissible in evidence to support such presumption."
 Defendant's final contention is that the evidence of the reading of the speedmeter of the radar machine was inadmissible against him because the Commonwealth failed to prove that the machine was properly set up and tested.
The testimony for the Commonwealth is that the radar machine was set up on the north side of Route 58 in such a manner that it would only indicate the speed of west bound motor vehicles, and that it was a regulation of the Department of State Police and the *880 practice of the officers to test the accuracy of the machine both before and after its use at each location. This test is made by comparing speeds of 50, 60 and 70 miles per hour registered on a calibrated speedometer of a police car run through the zone of operation with that registered on the radar speedmeter. If the rates of speed indicated by the speedometer and the radar speedmeter are the same, or do not vary more than two miles per hour, the radar machine is considered accurate and may be used in measuring the speed of motorists.
The officers on cross examination stated that they did not know whether or not the tests of this particular machine were made on this occasion. They merely assumed that the officers who set up the machine at that location and removed it had made the tests required by the Department.
Defendant's objection to the introduction of this testimony, his motion to strike and his motion to set aside the verdict on the ground that the Commonwealth had failed to prove by proper evidence that the machine had been recently and properly tested for its accuracy were overruled.
Most of the cases reported hold that, without statutory aid, the data obtained by the use of scientific instruments for measuring speed is admissible only after expert witnesses have testified as to the theory, operation and accuracy of the instruments. For a comprehensive review of the evidential problems raised by the use of radar speedmeters, see the following authorities wherein a number of pertinent cases are reviewed and analyzed: State Dantonio, 18 N.J. 570, 115 A.2d 35, 49 A.L.R.2d 460; annotations, 49 A.L.R.2d 469; 21 A.L.R.2d 1200; Woodbridge, Radar in the Courts, 40 Va.L.Rev. 809 (1955); Baer, Radar Goes to Court, 33 N.C.L.Rev. 355 (1955); Notes, 23 Tenn.L.Rev. 784 (1955); 7 Vand.L.Rev. 411 (1954); 38 Marq.L.Rev. 129 (1954).
It is claimed that it is impractical, cumbersome and expensive to obtain the testimony of an expert on the theory, operation and accuracy of the speed measuring devices in every case in which the speed of a motorist is thus sought to be established. In many of the articles written on this subject it is urged that the accuracy of the radar method of measuring speed has reached such a state of scientific development that the courts should take judicial knowledge of the accuracy of such measuring devices, and thus avoid the expense of obtaining the testimony of an expert in electronics. Dr. John M. *881 Kopper, a recognized authority in the field of electronics, who testified in several of the reported cases and has written numerous articles on the theory, operation and accuracy of radar machines, makes the following suggestion in an article entitled, The Scientific Reliability of Radar Speedmeters, 33 N.C.L.Rev. 343, 353:
"Accordingly, from a scientific point of view, the author recommends certain operational procedures as far as the speedmeter and its use are concerned. Such procedures include the checking of the speedmeter before and after use in each location, the keeping of records, and other details."
"It is important to check the meter for accuracy each time it is set up for use; if the meter is to be used at two sites in one morning then it should be checked at each site to avoid the contention that the meter was thrown out of adjustment during transit. The meter should be checked before the beginning of the period of observation of a highway and at the end of the period. In scientific work it is usual to assume that if a given instrument reads correctly at the beginning and ending of a set of measurements, its readings during the interval were also correct. The check can be made by having a car with calibrated speedometer run through the zone of the meter twice, once at the speed limit for the zone and once at a speed ten or fifteen miles per hour greater. As the test car goes by the meter the driver can notify the operator of the meter what his speed is. If the difference between the speedometer reading and the radar meter reading is more than two miles per hour, steps should be taken to see why this is the case and to remedy the matter. Such a test naturally requires a periodic checking of the speedometer of the test car. If such a procedure is carried out each time the radar meter is set up, the check measurements made with the automobile speedometer become supporting evidence." See, People Offermann, 125 N.Y.S.2d 179, 185, 204 Misc. 769.
The language of the statute indicates that the members of the General Assembly were familiar with these authorities when it was adopted. It makes the rate of speed indicated by radiomicro waves or other electrical devices admissible evidence in any proceeding where the speed of a motor vehicle is in issue without the necessity of proving by expert testimony the theory and operation of such methods of measuring speed. It does not eliminate the necessity for the Commonwealth to prove that the machine used for measuring speed had been properly set up and recently tested for accuracy. *882 This was the construction placed upon the statute by the Department of State Police. When the statute became effective July 1, 1954, the Department by appropriate regulation adopted in part the recommendation of Dr. Kopper, heretofore quoted, to the effect that each of its 36 radar machines "should be tested by trial runs when it was first set down, and then again tested before it was taken up." The trial court so construed and applied the pertinent provisions of the statute in an instruction given without objection which told the jury that the burden was upon the Commonwealth to prove beyond a reasonable doubt that the radar machine "had been properly set up and adjusted" and "must have been recently and accurately tested."
The statute is reasonably clear and the prosecution should find no serious difficulty in complying with its provisions. It is designed to aid the law enforcement officers in their efforts to reduce the appalling number of accidents on the highways and at the same time protect the rights of motorists against possible error of the mechanical device used for measuring speed. See, Woodbridge, Radar in the Courts, 40 Va.L.Rev. 809 (1955).
Inasmuch as the Commonwealth failed to introduce any legal evidence tending to show that the radar machine used to measure the speed of defendant motorist had been properly set up and recently tested for accuracy, the judgment of conviction must be reversed, the verdict set aside and the case remanded for a new trial if the Commonwealth be so advised.
Reversed and remanded.