## Richmond

THOMAS ARTHUR TAYLOR, JR.

V.

## MARITIME OVERSEAS CORPORATION

January 21, 1983.

Record No. 801040.

Present: All the Justices.

*William D. Breit (Breit, Rutter and Montagna,* on briefs), for appellant.

*Charles R. Dalton, Jr.; Michael F. Leban (Richard T. Robol; Seawell, McCoy, Dalton, Hughes, Timms & Gore,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

In the first of two jury trials in this personal injury case, the plaintiff, Thomas Arthur Taylor, Jr., recovered a verdict against the defendant, Maritime Overseas Corporation (Maritime), in the sum of $25,000. Upon motion of Maritime, the trial court set the verdict aside on the ground it had erred in refusing to admit certain evidence proffered by Maritime. In a retrial with the disputed evidence admitted, the plaintiff prevailed again, but the jury limited his recovery to $3,000. The trial court entered judgment on this verdict; Taylor contends the court erred in failing to enter judgment on the first verdict.

The record shows that on October 21, 1977, Taylor was employed as a fireman-water tender aboard the SS OVERSEAS ULLA, a tanker owned and operated by Maritime. In a motion for judgment which stated that it was filed under "the Jones Act, 46 USCA, Section 688 et seq.," Taylor alleged he was injured as a result of the ULLA's unseaworthiness and Maritime's negligence. At trial, Taylor submitted evidence tending to show that the burners in the vessel's boilers were defective and that, as a consequence, he injured his right shoulder while attempting to change the burners.

During the presentation of its evidence, Maritime sought to introduce a "Boiler Inspection Book," representing the report of a Coast Guard inspection conducted on the ULLA two weeks after Taylor sustained his injury. The trial court ruled that the report was hearsay and thus inadmissible. After verdict, however, the court reversed itself and held that the report was not hearsay and should have been admitted; accordingly, the court set the verdict aside and ordered a new trial.

■ We believe the court was correct in its initial ruling that the report was inadmissible. We agree with Taylor that Code § 8.01-390 governs the situation.[1] This section reads:

Copies of records of this Commonwealth, of another state, of the United States, of another country, or of any political sub-

---

[1] Maritime suggests that because the "Boiler Inspection Book" was compiled by the Coast Guard pursuant to its federal statutory duty to inspect the ULLA, the book was admissible under "a federal statutory rule of admissibility of government documents in non-federal forums," a rule Maritime says was created by a 1975 amendment to 28 U.S.C. § 1732. While we do not believe the amendment had this effect, the alleged federal rule was not called to the trial court's attention, and we will not consider the point now. Rule 5:21.

division or agency of the same, other than those located in a clerk's office of a court, shall be received as prima facie evidence provided that such copies are authenticated to be true copies both by the custodian thereof and by the person to whom the custodian reports.

This Code section creates what Professor McCormick calls the "official written statements" exception to the hearsay rule. C. McCormick, *Handbook of the Law of Evidence* § 315 (2d ed. 1972). Under this exception, "records and reports prepared by public officials pursuant to a duty imposed by statute, or required by the nature of their offices, are admissible as proof of the facts stated therein." *Williams* v. *Commonwealth*, 213 Va. 45, 46, 189 S.E.2d 378, 379 (1972). Although a record or report may qualify as a public document, the hearsay objection is overcome only if the document "relates facts or events within the personal knowledge and observation of the recording official to which he could testify should he be called as a witness." *Id.*

The "official written statements" exception arose from the "special need" to obviate the "inconvenience of requiring public officials to appear in court and testify concerning the subject matter of their statements." McCormick at 736. This inconvenience, however, would be suffered not only by a declarant whose statements are sought to be introduced into evidence but also by the officials whose authentication is required by Code § 8.01-390, *viz.*, the custodian of the records containing the statements and the person to whom the custodian reports. Hence, the court appearance of none of these officials is required, provided the records are authenticated properly.

■ Here, proper authentication of the "Boiler Inspection Book" was lacking when the exhibit was proffered at the first trial. Although each page of the proffered exhibit bore a stamp with the signature of a Coast Guard lieutenant certifying that the page was a "True Copy," nothing in the exhibit or the papers attached showed that this officer was the custodian of the disputed records. And, while the exhibit was accompanied by a letter of transmittal signed by "T. Wood[,] Captain, U.S. Coast Guard[,] Officer in Charge[,] Marine Inspection," nothing even suggested that Captain Wood was the person to whom the custodian reported. We are of opinion, therefore, that, while the "Boiler Inspection Book" qualified as an official document and thus would have been admis-

sible under the exception to the hearsay rule created by Code § 8.01-390, it was inadmissible at the first trial because not authenticated properly pursuant to that Code section.[2]

■ Maritime contends, however, that when it proffered the exhibit at the first trial, Taylor objected to its introduction upon the ground of hearsay only and the trial court rejected the exhibit on that single ground. Maritime asserts that Taylor did not assign the lack of authentication as a basis of objection; accordingly, the trial court did not reach the authentication issue and Taylor should be held to have waived any objection on that basis.

We disagree with Maritime; we believe Taylor properly preserved his authentication objection. There can be no doubt the trial court understood that counsel's objection included the lack of proper authentication. Indeed, in its letter opinion setting aside the first verdict and ordering a new trial, the court stated that "[o]bjection by plaintiff [to the admissibility of the Coast Guard records] was based upon both hearsay and lack of authentication."

■ The opinion stated further that the court's ruling declaring the records inadmissible had been "based upon the hearsay objection, leaving the authentication objection undetermined." The solution of this unresolved question, however, was not to order a new trial but to consider Taylor's separate authentication objection and, because the records were not authenticated properly, sustain the objection. Hence, we hold that the trial court should not have ordered a new trial on the ground it had erred in refusing to admit the Coast Guard records.

But, Maritime contends by way of cross-error, the trial court's action in ordering a new trial may be upheld upon either one of two additional grounds Maritime assigned below, *viz.*, after-discovered evidence and excessiveness of verdict. In our view, neither of these grounds merits lengthy discussion.

Maritime's purported after-discovered evidence consisted of documents showing that it had paid Taylor certain sums for maintenance during the period he was unfit for duty as a result of his injury. This evidence, Maritime says, would have contradicted

---

[2] Maritime argues that there was other evidence corroborating the authenticity of the "Boiler Inspection Book," including the ULLA's logs showing that the Coast Guard had inspected the vessel on the dates indicated in the book. But Code § 8.01-390 fixes a simple, easy way to authenticate an official document, and no reason suggests itself for excusing a failure to follow the prescribed course.

Taylor's testimony that he had not been paid maintenance until long after it was due and that the failure promptly to make the payments had resulted in his divorce from his wife.

■ As Maritime correctly states, one of the criteria for determining whether a new trial should be ordered for after-discovered evidence is whether the evidence could have been discovered before trial by the exercise of due diligence. Maritime argues that it satisfied this criterion. The ready answer to this argument is that the documents in question were in Maritime's possession all along as part of its business records. Furthermore, one of Taylor's interrogatories put Maritime on notice that the payment of maintenance would be a probable issue at trial; Maritime answered this interrogatory evasively, but its response indicated that its counsel was fully aware of what his client's records contained.

■ With respect to the contention that the first verdict was excessive, we remind Maritime of these basic principles:

> In personal injury cases, where the action merely sounds in damages, and . . . there is no rule for measuring such damages, the amount to be awarded is left largely to the discretion of the jury. The verdict of the jury, arrived at upon competent evidence and controlled by proper instructions, has always been held to be inviolate against disturbance by the courts.

*Murphy* v. *Va. Car. Freight Lines*, 215 Va. 770, 775, 213 S.E.2d 769, 773 (1975).

The sum and substance of Maritime's attack upon the first verdict is expressed in this sentence from its brief: "The totality of circumstances surrounding this accident indicates that the jury's award of $25,000.00 is clearly excessive and shocking to the conscience." But, although the verdict seems high, we find nothing in "the totality of circumstances" to warrant a holding that the award should shock the conscience of the court or to justify disturbing the verdict.

For the reasons assigned, we will reverse the judgment entered at the second trial, set aside the second verdict, reinstate the first award, and enter final judgment thereon in favor of Taylor.

*Reversed and final judgment.*