## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Wood

v.

Tinsley and
Western Express Co.

July 27, 1987

By JUDGE WILLIAM H. LEDBETTER, JR.

This personal injury case was tried with a jury on July 13, 1987. At the conclusion of an all-day trial, the jury returned a verdict in favor of the plaintiff (Wood) against the defendant (Tinsley) and assessed damages at $125,000.00.

Upon completion of the plaintiff's evidence, the co-defendant, Western Express Company, moved to strike the evidence. Before the court ruled on the motion, the plaintiff nonsuited Western Express.

After the jury was discharged, the defendant moved the court to require Wood to remit a part of his recovery, or, in the alternative, to grant a new trial, pursuant to Virginia Code § 8.01-383. The motion was reduced to writing and filed, accompanied by a memorandum of law. The plaintiff filed a reply memorandum. Counsel argued the motion this day.

The court overruled the motion and entered judgment on the verdict.

The purpose of this opinion letter is to state in writing the basis of the court's ruling, as the court indicated at the hearing that it would do.

The primary thrust of Tinsley's attack on the verdict is its alleged excessiveness. However, in his written motion, he also claims that the verdict is "contrary to the law" and is "not supported by the evidence."

There can be no doubt but that the evidence supports a verdict in favor of Wood. All of the evidence introduced at trial on the issue of liability indicated that the accident, which occurred in a road construction area on I-95 on November 9, 1984, was caused by Tinsley's negligence. Tinsley offered no evidence.

Incidentally, the defendant tendered an instruction which included a reference to contributory negligence; and, because the reference was relatively oblique, and Wood did not object to its being given, the court gave the instruction. Thus, although there was no evidence to support it, the jury was given the opportunity to consider the possibility of a defense verdict. The jury decided otherwise.

Similarly, the facts were sufficient to support the jury's conclusion that Tinsley's negligence proximately caused the injuries of which Wood complains. The plaintiff's evidence was uncontradicted. There was no evidence of pre-existing injury or condition. The defendant took the position that many of Wood's complaints were caused by aggravation of the back injury subsequent to the accident. The evidence showed that Wood continued to drive a truck on a long-haul basis even though he knew that such activity placed more stress on his lower back than other occupational choices. Wood sought to explain his post-accident work. Because of the conflict in inferences that could be drawn from the evidence, the defendant was granted an instruction explaining the duty of the plaintiff to mitigate his damages, and defense counsel argued this point forcefully to the jury. The jury's decision on this matter is supported by a reasonable and logical interpretation of the evidence.

The issue of damages, or, specifically, the amount of damages, presents a closer question.

As with the issue of liability, the fact that Wood was hurt as a result of the accident is not genuinely disputed. Rather, the *extent* of his injuries and the debilitating effect of those injuries formed the framework of the real controversy in this case.

The plaintiff suffered a lower back injury, first diagnosed as a "soft tissue" injury, later diagnosed as a protruding or herniated disc. The plaintiff and his

witnesses, including expert medical witnesses, testified about the nature and the effect of the injury.

The court gave a general personal injury damage instruction patterned after Instruction 9.000 in Volume I of the *Virginia Model Jury Instructions - Civil.* The model instruction contains eight subparagraphs. The court's instruction (Instruction No. 10) included subparagraphs (1), (2), (4), (5), (6) and (7) of the model instruction. The inclusion of (1), (2), (4), (5) and (6) were amply supported by the evidence and were not objected to. The defendant objected to (7) [which was] numbered (6) in the court's Instruction No. 10. That subparagraph permitted the jury to consider "any loss of earnings and lessening of earning capacity, or either, that he may reasonably be expected to sustain in the future." Since that subparagraph is the only one to which Tinsley objected, it is apparent that it is the basis of the defendant's attack upon the alleged excessiveness of the verdict.

The standard adopted for use by trial courts in ruling on motions of this nature based upon alleged excessiveness in personal injury cases is expressed in many decisions, including *Rutherford v. Zearfoss,* 221 Va. 685 (1980).

If the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury was motivated by passion, corruption or prejudice, or misconceived or misconstrued the law or the evidence, or if the award is so out of proportion to the injuries suffered as to suggest that the verdict is not the product of a fair and impartial decision, the court is obligated to step in and correct the injustice. Otherwise, the amount awarded is left largely to the discretion of the jury. If arrived at upon competent evidence and controlled by proper instructions, the jury verdict is held to be inviolate. *Taylor v. Maritime Overseas Corp.,* 224 Va. 562 (1983).

In this case, there was clear, competent and probative evidence from which the jury reasonably could have concluded that the injury is permanent; that Wood has suffered physical pain and mental anguish and will do so in the future; that he has been and will be inconvenienced; that he has incurred and will incur medical expenses; that he has lost earnings because he was unable to work for

certain periods; and that he will suffer a loss of earnings and a lessening of earning capacity in the future.

On this last point, the principles enunciated in *Exxon Corp. v. Fulgham*, 224 Va. 235 (1982), are controlling.

Here, as in *Fulgham*, the plaintiff is a man of limited education and earns his livelihood by physical effort and manual labor. There is credible evidence from which the jury could have concluded that because of his background, education, skills, and the work he performs, the type and character of the injury is such as will lessen his earning capacity and could diminish his opportunity to secure employment in the future. The injury suffered by Wood is permanent and painful, is not minimal or merely cosmetically objectionable, and, according to his expert witnesses, will be an impediment or hindrance to his performance of work for which he is qualified to perform by education, training and experience.

Although *Fulgham* makes a distinction between future loss of earnings and reduction of earning capacity, neither party made such a distinction in this case, and the subparagraph under consideration was not offered or objected to on that basis. Nevertheless, the court is of the opinion that there was credible evidence to support both facets of the instruction.

Expert witnesses testified about the plaintiff's probable future as a long-haul truck driver with the type of back injury he sustained. They predicted continuing pain and increasing inability to work at his trade. The plaintiff testified that he moved to Roanoke so that he could obtain assignments to easier routes. He said that he had recently delegated loading and unloading duties to an assistant. Rehabilitative experts testified that Wood could anticipate the need for retraining for work that would provide him with earnings of less than half his income from long-haul truck driving. Projected over the employment life of Wood, this element of damages, alone, supports the amount of the verdict. A few days before the trial, Wood failed a physical examination that is important, if not essential, to his future employment as a long-haul driver.

For the foregoing reasons, the court is of the opinion that the evidence supports the verdict, and that the amount of the verdict is not excessive. The fact that

the trial judge, if he had been the fact-finder in this case, would not have assessed Wood's damages as this jury did, is irrelevant. Given the fact that the evidence properly entitled the jury to consider all of the elements of damages discussed above, it cannot be said that the amount of the verdict "shocks the conscience of the court" or creates the impression that the jurors' decision was motivated by anything other than their view of the direct evidence and the inferences which they reasonably could draw from the circumstances of the case. Accordingly, the motion is overruled and the clerk has drawn an order, dated this day, in favor of the plaintiff in the amount of the jury's verdict.