## Alexandria
## WILLIAM M. CARROLL
v.
## COMMONWEALTH OF VIRGINIA
No. 1362-88-4
Decided August 21, 1990

Counsel

Edward F. Greco (Greco, Marlow, Struckman & White, P.C. on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**KEENAN, J.**—William Carroll was convicted in a jury trial of operating a motor vehicle after having been adjudicated an habitual offender. On appeal, he raises three issues: (1) whether the trial court erred in admitting into evidence an unauthenticated copy of his habitual offender adjudication order; (2) whether the trial court erred in admitting certain conclusory observations made by the arresting officer; and (3) whether the evidence was sufficient to support his conviction. We reverse Carroll's conviction based on our finding that the habitual offender adjudication order was not properly authenticated and certified, and thus was inadmissible. Because we reverse the decision of the trial court on this basis, we do not reach the other issues raised by Carroll.

At trial, the evidence showed that Carroll was arrested at approximately 2:00 a.m. on January 16, 1988 after receiving treatment for injuries sustained during an auto accident. The facts leading to Carroll's arrest were as follows. On January 15, 1988 a brown pickup truck hit a house on Commerce Avenue, in Warren County. The owner of the house and his son-in-law went outside approximately fifteen to twenty seconds after hearing a loud thump outside of the house. Carroll was at that time seated in the truck. As the son-in-law helped Carroll out of the vehicle through the driver's side door, several beer cans fell out. The vehicle was still running at that time, although it was disabled. The owner of the house did not see anyone else in or around the truck.

Within minutes, a police officer arrived at the scene. The officer testified that prior to arriving at the house he had seen a similar pickup truck driving along Commerce Avenue at an excessive rate of speed. As he passed the truck, he noticed only one occupant inside. Since the officer was travelling in the opposite direction of the truck, he had to proceed approximately two-tenths of a mile

before turning around to pursue the vehicle. He lost visual contact with the vehicle at that time. After turning around, he proceeded approximately one-half mile before encountering Carroll, who was seated on the grass beside the truck alongside the house.

During the trial, the Commonwealth introduced a copy of a May 14, 1984 order from the Craig County Circuit Court adjudging Carroll an habitual offender. The signature on the order was illegible and was clarified only by the typed word "Judge." In addition, the order contained the following:

A COPY TESTE:
WALTON F. MITCHELL, JR., CLERK
CRAIG COUNTY CIRCUIT COURT
BY /s/ Peggy B. Elmore
/s/ Peggy B. Elmore

The trial court admitted the order into evidence over Carroll's objection that it was not properly authenticated. The court subsequently found Carroll guilty of driving after having been adjudicated an habitual offender.

In this appeal, Carroll argues that the May 1984 Craig County order was not authenticated and certified in accordance with Code §8.01-389(A) because there was no indication that Peggy B. Elmore had authority to sign for the clerk. In addition, Carroll argues that the order was inadmissible because there was no evidence that it was actually served on him as required by the language of the order.

In response, the Commonwealth argues that *Ingram v. Commonwealth*, 1 Va. App. 335, 338 S.E.2d 657 (1986), creates a presumption that legal documents will be handled in a proper manner by those responsible for handling them. It further asserts that Carroll offered no evidence to rebut this presumption with respect to the Craig County order. The Commonwealth also argues that personal service on Carroll of the order adjudicating him an habitual offender was not statutorily required. Therefore, the language in the order providing for service on Carroll was merely a courtesy, and failure to comply with that directive would not render the order void.

In addressing this issue, we first examine Code § 8.01-389(A) which provides: "The records of any judicial proceeding

and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record." The form of certificate by the clerk, signifying that the document has been duly "authenticated and certified," however, is not prescribed by statute. Therefore, the question before us is whether the certificate:

> A COPY TESTE:
>     WALTON F. MITCHELL, JR., CLERK
>     CRAIG COUNTY CIRCUIT COURT
>     BY /s/ Peggy B. Elmore
>         /s/ Peggy B. Elmore

meets the requirements of §8.01-389(A). We find that it does not.[1]

In one of the first cases to address the validity of the certification of a court document, the Supreme Court held that copies of two wills, admitted to probate in the County Court of Louisa, which bore the certificate, "A true copy. John Hunter C.L.C." were properly certified and attested. *Wynn v. Harman's Devisees*, 46 Va. (5 Gratt.) 157, 165 (1848). In a subsequent decision, *Morgan v. Haley*, 107 Va. 331, 58 S.E. 564 (1907), the Court questioned the validity of the following certificate: "A copy, Teste: H.C.T. Ewing, Clerk." Since the Court reversed the case on other grounds, it did not actually decide whether the deed bearing this certificate was properly certified by the clerk of the court in whose office it was recorded. However, in writing the opinion of the Court, Justice Buchanan addressed the issue of the certificate's validity, stating: "If the certificate stated that the person making it was clerk of the court, in whose office the deed was recorded, or had used initials to show that fact . . . it would clearly have been prima facie sufficient." *Id.* at 332, 58 S.E. at 564.

The Supreme Court returned to this question in *Hurley v. Charles*, 112 Va. 706, 72 S.E. 689 (1911). The question before

---

[1] A panel of this court recently stated that the terms "certified" and "authenticated" are synonymous and that undue significance should not be placed on the statute's conjunctive use of them. *Owens v. Commonwealth*, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990). Because we find that the form of the certificate was deficient so that the certificate itself did not serve to "authenticate and certify" the document as required by Code § 8.01-389(A), we do not address that issue here.

the Court in *Hurley* was whether a will had been properly certified. The will had been admitted to probate in the county court of Tazewell County, and the certificate of probate, attested by "A.B. Buchanan, Deputy Clerk for S.M. Graham, Clerk of the Circuit Court of Tazewell County, Virginia" was found to be in proper form and sufficient. The certificate accompanying the actual will, however, contained only the following: "A.B. Buchanan, D. Clerk." The Supreme Court concluded that the will had been properly certified because the two documents, when read together, met the requirements of Code § 3334.[2] In reaching this conclusion, the court stated: "[U]nder these circumstances, it would be technical in the extreme to reverse the judgment of the circuit court when it plainly can be gathered from the certificate of probate and attestation of the copy of the will that A.B. Buchanan is the deputy clerk of Tazewell county, authorized by law to act in place of his principal." *Id.* at 710, 72 S.E. at 690, 691.

Finally, in *Taylor v. Maritime Overseas Corp.*, 224 Va. 562, 299 S.E.2d 340 (1983), the Court held that a Coast Guard "Boiler Inspection Book" was not admissible because it had not been properly authenticated pursuant to the requirements of Code § 8.01-390.[3] *Id.* at 565, 299 S.E.2d at 342. Although the document bore a stamp on each page with the signature of a Coast Guard lieutenant certifying that the page was a true copy, the court found that nothing in the record showed that this lieutenant was the custodian of the records. *Id.* In addition, while the exhibit was accompanied by a letter of transmittal signed by "T. Wood[,] Captain, U.S. Coast Guard[,] Officer in Charge[,] Marine Inspection," there was nothing to suggest that Captain Wood was the person to whom the custodian of the records reported. *Id.*

■ In the case before us, the certificate on the May 1984 Craig County order indicated that the person who was certifying the document had signed the clerk's certificate on behalf of Walton Mitchell, the clerk of the Craig County Circuit Court, and to that

---

[2] Code § 3334 provided: "A copy of any record or paper in the clerk's office of any court, . . . attested by the officer in whose office the same is . . . may be admitted in lieu of the original."

[3] Code § 8.01-390 reads: "Copies of records of this Commonwealth, of another state, of the United States, of another country, or of any political subdivision or agency of the same, other than those located in a clerk's office of a court, shall be received as prima facie evidence provided that such copies are authenticated to be true copies both by the custodian thereof and by the person to whom the custodian reports."

extent the certificate is consistent with the requirements of Code § 8.01-389(A). However, the deficiency in the certificate arises with the signature. The document was not "certified and authenticated" by the clerk but by Peggy B. Elmore. Neither the document itself nor any other evidence in the record establishes that Peggy B. Elmore is authorized by law to act in the place of the clerk. The order does not state that she is a deputy clerk, nor does it contain initials or other indicia to demonstrate that she is a deputy clerk. No evidence was presented to the trial court as to who Peggy B. Elmore is or whether she is authorized to act in place of the clerk.

We are not persuaded by the Commonwealth's argument that the burden of proving an irregularity in the document rested with Carroll, and that absent evidence to that effect, the document was admissible. Contrary to the Commonwealth's assertion, we do not read *Ingram* as creating a presumption that all legal documents are properly handled by those charged with handling them, thereby shifting the burden to the defendant to prove that the evidence is not admissible. In *Ingram*, a panel of this Court held that although DMV transcripts are hearsay, they are admissible in a court proceeding to prove that a defendant's license has been revoked, since they fall within a recognized exception to the hearsay rule. *Ingram*, 1 Va. App. at 339-40, 338 S.E.2d at 659. *Ingram* also held that double authentication of the transcript in accordance with § 8.01-390 is not required. *Id.* at 340-41, 338 S.E.2d at 660. However, the court in *Ingram* never addressed the issue of whether the transcript had been properly authenticated and certified. As the court stated: "Thus, if properly authenticated — that is, proven to be genuine — the transcript . . . was admissible." *Id.* at 340, 338 S.E.2d at 659.

In light of the above, we hold that the Commonwealth did not establish that the Craig County order was properly authenticated and certified as required by Code § 8.01-389(A) and, accordingly, we find that the trial court erred in admitting the document into evidence.

For the reasons stated, the decision of the trial court is reversed and the case is remanded to the trial court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Benton, J., and Willis, J., concurred.