## Richmond

PEARL SPEARS GRAY

v.

COMMONWEALTH OF VIRGINIA

No. 1570-92-2

Decided July 19, 1994

COUNSEL

Francis McQ. Lawrence (St. John, Bowling & Lawrence, on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

KOONTZ, J.—Pearl Spears Gray (Gray) appeals her conviction for operating a motor vehicle in excess of the posted speed limit in violation of Code § 46.2-870. Gray was issued a summons by state trooper J.P. Holley (Holley) after Holley's radar device measured Gray's vehicle traveling seventy-seven miles per hour in a sixty-five mile per hour speed zone. At trial, the court reduced the offense to traveling seventy-four miles per hour, found Gray guilty of that offense, and assessed a fine of twenty-seven dollars plus court costs. In this appeal, Gray contends that her conviction should be overturned on the ground that the Commonwealth failed in its burden of proving that the radar device used to measure the speed of her vehicle was calibrated properly. We disagree and affirm the conviction.

At trial, Gray conceded that she was traveling above the speed limit, but maintained that she was traveling "with the flow of traffic" between sixty-five and seventy miles per hour, probably "closer to seventy." Holley testified that he performed multiple tests on the radar device at the beginning of his patrol shift as he was required to do. These tests involve preprogrammed checks of the device's internal calibrations and field tests of the device using tuning forks both while the patrol vehicle is stationary and while it is moving, and a separate test against the patrol vehicle's speedometer. Holley testified that the device registered accurately during all of these tests.

Holley further testified that the two tuning forks used to test the radar had been calibrated recently as shown on a certificate verifying their accuracy. Gray objected to the introduction of the calibration certificate on the ground that it was not a true copy of the original. The trial judge, while preserving Gray's objection, received the certificate "conditionally" into evidence. Without objection, Holley was permitted to testify that the patrol vehicle's speedometer had been calibrated recently for accuracy and to identify a certificate confirming that calibration. Both certificates were then marked and received into evidence.

Holley then testified that he used the radar device to measure the speed of Gray's vehicle. Gray objected to the introduction of the evidence of the radar device's use "just so I preserve [the objection]." The court noted Gray's objection and allowed Holley to testify. Holley further testified that Gray was upset and told him that she would lose her license if she received another speeding ticket.

At the close of the Commonwealth's case, Gray moved to strike the evidence, asking the trial court to rule on her objection to the introduction of the tuning fork certificate. She argued that on this ground the Commonwealth had failed to prove the accuracy of the radar device. Gray asserted that Holley was required to perform all the tests and that without proof of the efficacy of the tuning fork test, the accuracy of the radar was inconclusive. The trial judge opined that the speedometer test alone would be enough to assure the accuracy of the radar. The trial judge then stated, "I'm going to take your motion under advisement and your objection is preserved."

After Gray presented her case, she renewed her motion to strike, restating her objection to the introduction of the tuning fork calibration certificate. The trial judge asked Gray's counsel whether Code § 46.2-882 required proof of both the tuning fork accuracy and the speedometer accuracy to prove accuracy of the radar device. Counsel conceded that the statute did not expressly require both tests, but added that Holley had testified that he was required to perform both tests. The Commonwealth asserted that Code § 46.2-882 requires proof of accuracy by one method only. The trial judge stated, "I think the speedometer calibration is sufficient to prove the accuracy of the radar" and on that basis found Gray guilty of the offense.

In this appeal, Gray reasserts that pursuant to Code § 46.2-882, the Commonwealth was required to prove the accuracy of both the tuning fork and speedometer tests performed by Holley. She also argues that the lack of a "true copy" of the tuning fork accuracy certificate prevented the Commonwealth from meeting that burden.[1] We disagree.

---

[1] While Gray objected to its introduction, the certificate of tuning fork accuracy was received into evidence by the court. Although the trial judge indicated that he would take her objection under advisement, the record before us does not indicate that the objection

Code § 46.2-882 provides in pertinent part:

The speed of any motor vehicle may be checked by the use of radar . . . . The results of such checks shall be accepted as prima facie evidence of the speed of such motor vehicle in any court or legal proceeding where the speed of the motor vehicle is at issue.

In any court or legal proceeding in which any question arises about the calibration or accuracy of any radar . . . device as defined in this section used to check the speed of any motor vehicle, *a certificate, or a true copy thereof, showing the calibration or accuracy of the speedometer of any vehicle or of any tuning fork employed in calibrating or testing the device*, and when and by whom the calibration was made, shall be admissible as evidence of the facts therein stated. No calibration or testing of such device shall be valid for longer than six months.

(Emphasis added.)

 The statute allows the speed of motor vehicles to be checked by radar. The results of such checks are accepted as *prima facie* evidence where speed is an issue. *Sweeny v. Commonwealth*, 211 Va. 668, 670-71, 179 S.E.2d 509, 511-12 (1971). The statute must be strictly construed, *id.*, but we are not required to adopt a curious, narrow or strained construction. *Crews v. Commonwealth*, 3 Va. App. 531, 535-36, 352 S.E.2d 1, 3, *appeal denied*, 360 S.E.2d 715 (Va. 1987). By using the alternative conjunction "or" the legislature clearly intended to provide alternate methods of proving the accuracy of the radar device.

 It is well established that the Commonwealth must prove that the radar device "had been properly set up and adjusted" and "must have been recently and accurately tested." *Royals v. Commonwealth*, 198 Va. 876, 882, 96 S.E.2d 812, 816 (1957). In *Thomas v. City of Norfolk*, 207 Va. 12, 147 S.E.2d 727 (1966), the appellant contested whether sufficient evidence in the record

---

was ever sustained. Moreover, during closing argument the trial judge stated that both certificates were in evidence. Accordingly, it would have been possible for the trial judge to accept the accuracy of all tests performed by Holley. However, because the admission of the tuning fork certificate is, at best, equivocal, and because the trial judge specifically stated that he was relying solely on the speedometer test, we will address the specifics of Gray's claim.

proved that the radar device had been recently tested for accuracy. The Supreme Court stated:

> While the matter has not heretofore been presented to us it is well recognized in other jurisdictions that evidence of a test of radar equipment by tuning forks in this manner is admissible as tending to prove the accuracy of the equipment.

> In the absence of evidence to the contrary in the present case, the trial court accepted, as it had a right to do, the evidence of [tuning fork tests] as adequate proof of the accuracy of the radar set.

*Id.* at 14, 147 S.E.2d at 728 (citations omitted). *Thomas* clearly stands for the proposition that testing a radar device by tuning forks alone is sufficient to prove the accuracy of the equipment, a position widely adopted by other jurisdictions. *See Myatt v. Commonwealth*, 11 Va. App. 163, 171-72, 397 S.E.2d 275, 280-81 (1990) (Cole, J., dissenting). In *Myatt*, this Court found that insufficient evidence had been entered to support the accuracy of the tuning forks, noting, however, that a subsequent amendment to the statute would have cured the defect. *Id.* at 167 n.4, 397 S.E.2d at 277 n.4. It stands to reason that if tuning fork tests alone are sufficient to convict, the speedometer test is equally efficacious, a position which again finds support in other jurisdictions. *See, e.g., State v. Kincaid*, 453 N.W.2d 738, 740 (Neb. 1990).

Judge Benton, in his dissent, asserts that because Holley was required to perform both the tuning fork and speedometer tests prior to placing the radar device into service each day, the Commonwealth was required to prove the efficacy and accuracy of both tests at trial. Although it is true that Holley could not have put the radar device into service had it not passed each of the tests, that fact alone does not raise the subsequent burden of proof placed on the Commonwealth by Code § 46.2-882 when evidence of the radar's use is introduced at trial. Rather, the requirement of duplicate testing merely suggests that when proof is required in court, the Commonwealth will be able to elect between methods of proof according to the evidence available. Where, as here, the Commonwealth by reason of a technical, rather than factual, defect cannot demonstrate the accuracy of both methods, proof by a single method will suffice.

Accordingly, we hold that it was not error for the trial judge to accept Holley's testimony that the radar properly registered the speed of her vehicle when tested against the vehicle's speedometer. We further hold that the certificate of that speedometer's accuracy constituted *prima facie* evidence of the accuracy of the speed recorded by the radar when trained on Gray's vehicle. For these reasons, we affirm Gray's conviction.

*Affirmed.*

Elder, J., concurred.

Benton, J., dissenting.

In pertinent part, Code § 46.2-882 provides as follows:

The speed of any motor vehicle may be checked by the use of radar . . . . The results of such checks shall be accepted as prima facie evidence of the speed of such motor vehicle in any court or legal proceeding where the speed of the motor vehicle is at issue.

In a decision construing Code § 46-215.2, the predecessor to this statute, the Supreme Court held that the statute "does not eliminate the necessity for the Commonwealth to prove that the machine used for measuring speed had been properly set up and recently tested for accuracy." *Royals v. Commonwealth*, 198 Va. 876, 881, 96 S.E.2d 812, 816 (1957). The Court also " 'recognized not only the necessity to carry out tests for accuracy on radar machines before and after they are used, but also the necessity for proving such tests by proper evidence in a subsequent prosecution for speeding.' " *Biesser v. Town of Holland*, 208 Va. 167, 169, 156 S.E.2d 792, 793-94 (1967) (quoting *Crosby v. Commonwealth*, 204 Va. 266, 268, 130 S.E.2d 467, 468 (1963)).

After the Court rendered the *Biesser* decision, the legislature amended the statute to address the proof problem. The statute as further amended now contains the following additional language:

In any court or legal proceeding in which any question arises about the calibration or accuracy of any radar, electrical, or microcomputer device as defined in this section used to check the speed of any motor vehicle, a certificate, or a true copy thereof, showing the calibration or accuracy of the speedom-

eter of any vehicle or of any tuning fork employed in cali-
brating or testing the device, and when and by whom the
calibration was made, shall be admissible as evidence of the
facts therein stated. No calibration or testing of such device
shall be valid for longer than six months.

Code § 46.2-882. Although this paragraph of Code § 46.2-882
creates an exception to the hearsay rule to allow admission into
evidence of a calibration certificate, it does not purport to deter-
mine the sufficiency of the evidence required to establish the accu-
racy of the radar.

The legislative intention is obvious on the face of the statute.

Manifestly [the] Code . . . was amended . . . to obviate the
necessity of having two troopers testify in every contested
speeding case which involves the use of radar. It was the in-
tention of the General Assembly to provide, in cases where
any question arises as to the calibration or accuracy of any
radio microwave or any other electrical device, that such ac-
curacy could be shown by a certificate of the officers who
conducted the tests of the device, and who had knowledge of
its accuracy.

The statute contemplates that the speed of motor vehicles
may be checked by radar; that the results of such checks be
accepted as prima facie evidence where speed is an issue; and
that persons may be convicted on the certificates filed in ac-
cordance with the statute. However, the statute must be
strictly construed and there should be a full compliance
therewith if a certificate is to be used as evidence. In prose-
cutions for speeding arising through the use of radar, the ac-
curacy of the radio microwave, or other electrical device
which measures the speed of a vehicle, is critical, for it is the
reading reflected by this device which brings about the arrest
and the conviction of a defendant.

*Sweeny v. Commonwealth*, 211 Va. 668, 670-71, 179 S.E.2d 509,
511-12 (1971).

If the Commonwealth relies upon evidence of speeding based on
the readings from a radar device, the burden is on the Common-
wealth to prove beyond a reasonable doubt the accuracy of the

radar. *See Biesser*, 208 Va. at 168-69, 156 S.E.2d at 793; *Farmer v. Commonwealth*, 205 Va. 609, 611-12, 139 S.E.2d 40, 42 (1964); *Royals*, 198 Va. at 879-80, 96 S.E.2d at 814. In convicting Pearl Spears Gray, the trial judge specifically did not consider the results of the tuning fork tests. The trial judge ruled that the evidence proved the radar was reflecting the correct speed of Gray's automobile. The trial judge reached that conclusion upon evidence that the radar had reflected the correct speed of the patrol vehicle when Holley tested the radar and upon the certificate in evidence that the speedometer of the patrol vehicle was accurate. In view of Officer Holley's testimony, the trial judge erroneously concluded that the speedometer calibration alone proved beyond a reasonable doubt the accuracy of the radar.

In reviewing this issue, we are guided by the following principles:

> It is well established that "[t]he judgment of the court sitting without a jury will not be set aside unless it is plainly wrong or without evidence to support it. However, a trial court's conclusion based on evidence that is 'not in material conflict' does not have this binding effect on appeal." A "trier of fact . . . 'may not arbitrarily disregard uncontroverted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record,'" and a finding under such circumstances presents a question of law, reviewable by this Court on appeal.

*Watson v. Commonwealth*, 17 Va. App. 124, 125-26, 435 S.E.2d 428, 429 (1993) (citations omitted).

Officer Holley, who operated and tested the radar unit, testified that he was "*required*" to perform two tests for internal calibration, one involving the use of tuning forks and one involving speed of a vehicle.[2] He further testified that if the radar unit does not

---

[2] The officer testified that the radar unit is designed to operate when the patrol car is stationary or moving and that he is required to conduct various tests to verify the calibration of the radar. He also testified that the radar unit has two window monitors mounted in his patrol car: one that indicates the speed of the target vehicle and one that indicates the speed of the patrol vehicle.

The first test involves pressing a switch on the radar after it has been connected to a power source. That switch should cause the number thirty-two (32) to appear on both window monitors if the internal workings of the device are properly calibrated. The officer

"meet all those criteria," it may not be used. The officer's testimony contains no further explanation regarding the requirement to conduct all these tests.

The officer also testified as follows:

Q .... And the process that you described that you used on a daily basis, that you were trained to do to test this device, depends substantially, if not entirely, on the accuracy of those tuning forks, does it not?

A Yes. And like I said, everything, you can't have one thing go wrong, it has to meet all, I mean, you have to make sure all the lights are working, the display shows up what it's supposed to as well as the tuning forks. You can't have . . . .

Q I understand, but on top of those other things being working, actually the tuning fork is critical to the testing of the machine, is it not?

A Absolutely.

Thus, the Commonwealth's own evidence established a critical link between determining the accuracy of the radar and the tuning fork tests.

___

is then required to press a light display button. If the internal parts of the radar are functioning properly a series of the number eight (8) will appear on both window monitors and a series of lights will illuminate.

After testing the internal calibrations, the officer is required to test the radar while in the stationary mode by using two tuning forks. The vibration of one tuning fork should cause the target window monitor to display the number thirty-five (35). The vibration of the other tuning fork should cause the target window monitor to display the number sixty-five (65). He is then required to use the same tuning forks to test the radar unit while in the moving mode while his vehicle is stationary. During this test, the simultaneous vibration of the two tuning forks should cause the target window monitor to display the number thirty (30) and the patrol window monitor to display the number thirty-five (35).

Lastly, he is required to test the radar unit by comparing the reading on the window monitors against the speed as indicated on the patrol vehicle's speedometer. To conduct this test, he must drive the patrol vehicle five miles per hour above the posted speed limit of the roadway on which the unit is to be operated and then five miles per hour below the posted speed limit of the same roadway.

The officer testified that the radar unit has to satisfy all of those criteria and that the tuning fork test was critical to establishing the accuracy of the radar unit. He also testified that he is required to perform these tests at the beginning of his duty shift and at the end of his duty shift.

The trial judge had no knowledge whether the manufacturer of the radar required all of these tests to determine accuracy of the radar or whether the tests were administrative requirements. To the extent that the Commonwealth's evidence was silent as to the reason for the requirements, the trial judge was not at liberty to disregard the officer's testimony and to conclude that the accuracy of the tuning fork test was irrelevant to proof of the accuracy of the radar unit. The officer's testimony established that he was required to use all of these tests as a measure of whether the radar unit may be used. The officer's testimony, taken in context, reveals that the critical issue is whether the radar device passed each test. On the basis of the evidence proved at trial, the trial judge erroneously ruled "that the speedometer calibration is sufficient to prove the accuracy of the radar."

The majority opinion misconstrues *Thomas v. City of Norfolk*, 207 Va. 12, 147 S.E.2d 727 (1966), when it interprets that case as establishing the principle that regardless of the other evidence the result of a tuning fork test *ipse dixit* proves beyond a reasonable doubt the accuracy of the radar set. The Court in *Thomas* clearly did not go as far as the majority perceives; the Court merely stated that a tuning fork test "is admissible *as tending* to prove the accuracy of the equipment." *Id.* at 14, 147 S.E.2d at 728 (emphasis added). Any doubt about the intent of that language is resolved because in the very next sentence the *Thomas* opinion states that "*[i]n the absence of evidence to the contrary . . .*, the trial court . . . had a right [to accept] the evidence of [tuning fork tests] as adequate proof of the accuracy of the radar set." *Id.* (emphasis added). The officer's testimony in this case presents evidence to the contrary sufficient to negate the *prima facie* case.

The Commonwealth also argues that Gray incorrectly asserts that the trial judge had no evidence of the calibration of the tuning forks. Although when Gray objected to the exhibit, the trial judge stated that he would "conditionally receive" the exhibit, the record establishes that the exhibit was not considered by the trial judge. When the trial judge conditionally received the document, the trial judge explicitly preserved Gray's objection. The objection stated that the exhibit, which was notarized by a person whose title was not specified, and which purported to be a "copy" of the original, was not properly authenticated as required by Code § 8.01-390. *See Ingram v. Commonwealth*, 1 Va. App. 335, 340,

338 S.E.2d 657, 659-60 (1986). *See also Carroll v. Commonwealth*, 10 Va. App. 686, 690 n.3, 396 S.E.2d 137, 140 n.3 (1990). On no less than three later occasions, Gray renewed the objection. Moreover, there was no proffer by the Commonwealth that later evidence would provide a connection that would clarify the admissibility of the exhibit. *See Cutchin v. City of Roanoke*, 113 Va. 452, 472, 74 S.E. 403, 406 (1912).

More significantly, however, the ruling of the trial judge at the conclusion of the case leaves no doubt that the trial judge did not consider the certificate as evidence. In making his ruling, the trial judge stated: "I think that the speedometer calibration is sufficient to prove the accuracy of the radar." By its very terms, that ruling is declaratory of the judge's intention to rely solely upon the certification of the speedometer's accuracy.

For these reasons, I would reverse the conviction and dismiss the prosecution.